## No. 13,493.

### PATTERSON ET AL. *v.* PEOPLE EX REL. BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WELD.

(53 P. [2d] 1187)

Decided December 2, 1935.   Rehearing denied January 27, 1936.

Mr. HENRY H. CLARK, for plaintiffs in error.

Mr. THOMAS A. NIXON, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

AN action by the people of the state of Colorado, on relation of the board of county commissioners of the county of Weld, against Jesse R. Patterson, former county treasurer, and United States Fidelity and Guaranty Company, surety, on his official bond.

It appears that in 1926, 1928 and 1930, Patterson was elected treasurer of Weld county, and that January 1, 1927, 1929 and 1931, he qualified and entered upon the discharge of the duties of his office, continuing to serve during the several terms of two years each; that during his incumbency he received the moneys, books, papers and other things of said office; that the bond given by him and his surety for the term commencing January 1, 1931, provided that he should "pay according to law, all moneys which shall come to his hands as treasurer, and shall render a just and true account thereof, whenever required * * * by any provision of law, and shall deliver over to his successor in office * * * all moneys, books, papers and other things appertaining thereto or belonging to his office." It further appears that January 1, 1933, when his successor had qualified and entered upon the discharge of his duties, Patterson delivered to him everything belonging to the office, including the undisbursed moneys he had received by virtue thereof, with the exception of $16,708.52, represented by the balance of deposits to the credit of Weld county, made by the

treasurer with Kountze Brothers, a failed New York copartnership.

In connection with the Kountze Brothers item, it further appears that from time to time through the years, various school districts of the county had issued bonds, making the interest coupons, as they lawfully might, payable at Kountze Brothers, or at the office of the county treasurer, at the option of the holders, and that to accommodate such of the holders as should elect to present their coupons at Kountze Brothers, it had been the custom of county treasurers, for thirty years, or more, to carry an account with that institution in the name of the county, to be disbursed as and when coupons were presented for payment. It is to be noted that remittances to the account were not charged to the school districts when made, nor were they so allocated by Kountze Brothers when received, but from the deposited fund to the credit of the county they paid such coupons as were presented and forwarded them to the treasurer, who would then debit the accounts of the issuing school districts. Other than the presentation of due coupons at Kountze Brothers, notice of election of holders to have them paid there seems never to have been given.

Judgment was given against Patterson and his surety in the sum of the Kountze Brothers balance, with interest. They assign error, and say: (1) That the action is not by the real party in interest, for that the funds deposited with Kountze Brothers belonged to the several interested school districts, not to Weld county; (2) that since for thirty years it had been the practice of Weld county treasurers to transmit funds to Kountze Brothers to pay school district bond coupons, precisely as Patterson had done, the county was estopped from asserting the claim here; (3) that they are entitled to set off the amount on deposit with Kountze Brothers when Patterson first took office, admitted to have been $10,802.52; (4) that inasmuch as it is conceded that the county filed a claim in the Kountze Brothers bankruptcy proceeding,

alleging right of preference, the extent of the loss, if any, is not now ascertainable; (5) that the act of 1927, S. L. '27, p. 280, requiring county treasurers to deposit public funds "in one or more responsible banks located in the State of Colorado," is indicative of legislative intention to relieve such officials from the strict responsibility theretofore enforced.

We think the moneys involved here belonged to the county in the sense that it has authority to maintain an action for their recovery. The county treasurer of his county collects the taxes resulting from levies made for the state, the county, the schools. The aggregate of the collection becomes the "moneys" received by virtue of his office, and are the moneys which "shall be delivered to his successor in office." C. L. 1921, §8803. The requirement is not that he shall turn over to the various governmental units the sum due each, but that he shall make delivery to his successor. Such is the mandate of the statute in relation to his duty, and his bond, also statutorily couched, is of like import. C. L. 1921, §8791. To the extent that the treasurer fails to turn over to his successor the funds in his hands, loss results, not in divisible sums to the several activities for which he has collected taxes, but to the county, the entity whose officer has failed to account for all the moneys coming into his hands. When, as here, the county's books, kept by the treasurer—and not claimed to be in error—show that there is credited to the state, one sum, to the county itself, so much, and to the school districts, another amount, and the total of these exceeds the sum the treasurer has delivered to his successor, the county is "aggrieved," for it "is the owner of the funds that are withheld." *Bell v. People,* 92 Colo. 585, 22 P. (2d) 857. In *McClure v. La Plata County,* 19 Colo. 122, 34 Pac. 763, the court gave attention to "the relationship that a county treasurer holds to the money that comes into his hands by virtue of his office," and said, "that under the provisions of our statute * * *, the money collected and re-

ceived by him belongs to the county." See, also, *Gartley v. People,* 24 Colo. 155, 49 Pac. 272; *Gartley v. People,* 28 Colo. 227, 54 Pac. 208.

█ Considering that the county treasurer, not the board of county commissioners, is the custodian of the funds he collects, and that he must account therefor at the end of his term, it is no answer to the default here to say the board had knowledge of the place of deposit which occasioned the embarrassment, nor is the rule different because a procession of boards knew that a procession of treasurers had deposited funds in the same depository. The doctrine of strict and undivided responsibility of county treasurers for the safe-keeping of tax funds coming into their hands, repeatedly announced, does not admit of the plea of estoppel sought to be invoked.

█ We think the claim of set-off is without merit. When plaintiff in error Patterson first qualified he receipted to his predecessor for the then Kountze Brothers deposit. Almost immediately the balance in that account was reduced to a few hundred dollars, and had he not made further deposits on his own responsibility the account would have been closed long before the end of his first term, for which he fully accounted. Besides, on two occasions subsequent to the time Patterson took over from his predecessor the Kountze Brothers item, he requalified and receipted to himself for the balance.

█ That the county took steps in its interest in the Kountze Brothers bankruptcy proceeding, ought not, we think, to militate against its right to proceed here. It is not claimed that the county has realized anything from its participation in the bankruptcy matter. Indeed, so far, the decisions have been adverse. That the county was alert to assert its claims in that quarter would seem to have been in the line of its duty, at least to itself, and likely to plaintiffs in error, for any recovery there, and whenever awarded, would necessarily redound to the benefit of the treasurer and his surety. But whatever

may be the possibilities, the treasurer can not base thereon any claimed right to delay delivering moneys legally in his hands to his successor.

The statute of 1927, said to relax the rule of strict responsibility of county treasurers, is without application. The loss here was not of money in a bank in Colorado, but in one not within the purview of the act.

We are not unmindful of the hardship to plaintiffs in error, and would that it were otherwise; but when we consider that the entire matter was within their uncontrolled keeping, we do not feel at liberty to absolve them.

Let the judgment be affirmed.

MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND dissent.