[No. 3788.]

BABCOCK ET AL. V. THE CITY OF ROCKY FORD.

1. CHECK—*Presentation for Payment.* There is no hard and fast rule as to when a check must be presented for payment. It must be presented within a reasonable time, which depends on the situation of the parties with reference to one another, and to the bank, as well as all other material facts and circumstances attending the transaction.

The cashier of a bank was also treasurer of a municipal corpora-

tion. In the latter capacity he received from the city clerk a check drawn upon the same bank. Knowing that the bank was in failing condition he omitted to present the check on the day of its receipt, alleging as an excuse that he "did not have time," and, on the next secular day, the bank closed its doors. Held he was derelict in failing to present the check on the day upon which it came to him.

2.  PUBLIC OFFICER—*Liability for Public Moneys Lost by Failure of Bank.* A city treasurer who deposits the money of the city in a bank is liable therefor if lost by the failure of the bank.

3.  MUNICIPAL CORPORATIONS—*Liability of Treasurer.* Under Rev. Stat., sec. 6639, the city council have the election to either designate a bank where the corporate funds shall be kept, and thus relieve the treasurer and his sureties if the bank fails, or to decline making such designation, holding the treasurer as an insurer. The designation must be made by ordinance.

The deposit by a city in a bank of large sums of money as special interest-bearing deposits does not amount to such designation.

*Appeal from Otero District Court.* HON. J. E. RIZER, Judge.

Mr. G. Q. RICHMOND for appellant.

Mr. H. M. MINOR for appellee.

CUNNINGHAM, Presiding Judge.

Babcock, the appellant, was elected treasurer of the city of Rocky Ford, by the council of that city, and assumed the duties of his office on August 6, 1907. On August 15, 1908, he resigned from the office of city treasurer, and his successor was chosen. After his resignation, he failed to deliver to his successor money belonging to the city which had come into his, Babcock's, hands, to the amount of $3,769.09, as contended by plaintiff; and as admitted by defendant, he failed to turn over money that had come into his hands as treasurer, belonging to the city, to the amount of $3,185.14. The difference between the amount alleged to have come into Babcock's hands, and the amount admitted by him to have come into his hands, grows out of a transaction whereby the

city clerk gave to Babcock his check for $583.95, which
the city contends Babcock ought to have promptly pre-
sented to the bank on which it was drawn, but which he
did not present, and within a day or two after the city
clerk had delivered this check to Babcock the bank failed.
The check in question was dated December 30, 1907, and
was drawn upon the State Bank of Rocky Ford; it rep-
resented money which the city clerk had collected, and
in this manner attempted to turn over to Babcock as
treasurer. Babcock insists that the check was not deliv-
ered to him until the morning of December 31st, while
the city clerk testified unequivocally that he delivered
the check to Babcock in the afternoon of December 30th,
the date it was drawn. The importance of the date of
the delivery of the check grows out of the fact that the
bank remained open and continued to receive deposits
and transact business in the usual way throughout the
entire day of December 31st. The following day, Jan-
uary 1st, was a holiday, and on January 2nd the bank
failed to open, and went into the hands of a receiver. It
is contended on behalf of appellants that Babcock, under
the ordinary commercial rules and the authorities per-
taining thereto, had all of the day following the day on
which he received the check in which to present the same
for payment, and therefore, if he received the check on
the 31st, he ought not to be held responsible for his fail-
ure to present it.

1. There is no hard and fast rule on this subject.
As is well said in a recent opinion of the supreme court
of West Virginia:

"Presentation of the check for payment in the bank
on which it is drawn must be made within a reasonable
time, and what is a reasonable time depends upon the
situation of the parties with reference to one another,
and with reference to the bank, and all other material
facts and circumstances entering into the transaction."

—*Lewis Co. v. Montgomery Co.*, 59 W. Va., 75, 52 S. E., 1077, 4 L. R. A. (N. S.), 135.

The facts in the case before us, as disclosed by the record, are: that Babcock, payee of the check and city treasurer, was an employe of the State Bank of Rocky Ford, on which it was drawn, and, according to his statement, the check was delivered to him in the forenoon of December 31st; while he was in the bank, back of the counter, presumably discharging his duties as assistant cashier. The bank was in a failing condition, and Babcock admits, on cross-examination, that he knew the bank was "having a hard time," and his only excuse for not promptly presenting the check for payment was, to use his own language: "Because I did not have time. I was working for the State Bank of Rocky Ford." He seems to have regarded his duty to the bank as paramount to his duty to the public. This contention cannot be allowed. Under the circumstances just related, and in view of the fact that the following day was a holiday, Babcock was derelict in his duty in not presenting the check on the day he received it, if he received it, as he says, in the morning of December 31st.

The case was tried to the court without a jury. The findings were general, and in favor of the city. It may well be assumed that the trial court found from the evidence that the check was delivered to Babcock on December 30th, as testified by the city clerk, and if the trial court did so find, the evidence to support such finding is ample. Our conclusion, therefore, is, that as to the liability of Babcock, no distinction can be drawn between the money represented by the check which Babcock ought to have presented and collected, and the balance of the money which had been on deposit in the bank for some time prior to its failure.

2. Babcock seeks to escape liability for his failure to turn over to his successor any of the money, on the

theory that he is relieved from this obligation by the failure of the bank. His contention in this behalf is contrary to the ruling in *Gartley v. People,* 24 Colo., 155, 49 Pac., 272, and re-affirmed by unanimous court in *Gartley v. People,* 28 Colo., 227, 64 Pac., 208. The liability of public officials for public money coming into their hands, and lost by bank failures, is very ably discussed by Chief Justice Hayt and Justice Goddard in a dissenting opinion in the first Gartley case, and we shall make no attempt to review the authorities which are there so ably analyzed. It may not be amiss, however, to call attention to the fact that in the second Gartley case, Mr. Justice Gabbert used this language:

"The first decision was announced in this case in 1897. In 1893 this court, in *McClure v. La Plata County,* 19 Colo., 122, held that the liability of county treasurers for public funds collected was express and extraordinary. In the face of these decisions, the law-making power has not indicated by any act that the liability of a receiver of public money should not be as great as this court has declared. If the liability thus imposed is too onerous, relief must come from the legislature. Courts can only declare the law as it now stands."

The second Gartley case was decided in January, 1901, and the legislature has not yet seen fit, by any enactment, to relieve public officials from the express and extraordinary liability fixed upon them by the decisions of the supreme court of our state. Moreover, even under the dissenting opinion of Judge Goddard in the first Gartley case (p. 174) it is only contended that a public official should be relieved from liability:

"Where he exercises the strictest care in selecting a bank of unquestioned solvency in which to deposit the public money, and being guilty of no fault in leaving it there, and the money is lost through unexpected failure of the depositary."

There is no comfort for the appellants in the case before us in the rule which Judge Goddard contended for, since Babcock, by his own admission, knew that the bank in which he was employed, and in which he saw fit to deposit the public money, was, on the 31st day of December, and even prior to that time, to use his own language, "having a hard time."

3. It is further contended on behalf of appellants that under section 6639, R. S., it is made the duty of treasurers of towns and cities to keep all money in their hands belonging to the municipal corporation in such a place of deposit as may be designated by ordinance. It is not contended that the city of Rocky Ford had by ordinance designated any place of deposit for the city funds. Indeed, it is admitted by the pleadings that the council had not done so. We are not impressed with appellant's contention that the word "may," in the aforesaid section, is equivalent to "must" or "shall." It is our opinion that under the statute the city council had the right of election as to whether it should designate the depositary for the treasurer, and thus take the risk of relieving him and his bondsmen from liability in case the depositary should fail, or of holding the treasurer as an insurer and declining to make the designation. The mere fact, if it be a fact, as contended on behalf of appellants, that the city had, at the time Babcock was chosen treasurer, and continued thereafter to have, large sums of money deposited in the State Bank of Rocky Ford, in the form of special interest-bearing deposits, does not amount to a designation by the council of said city of said bank as a depositary for its funds, and imposed no duty upon the treasurer to deposit all other funds there. There is no attempt in this case to hold the city treasurer liable on account of these special deposits. The terms and conditions under which they were made are not disclosed by the abstract, but it is disclosed, as we have already

pointed out, that no ordinance had been passed designating the bank as a city depositary.

The judgment of the trial court in favor of the city and against appellants is affirmed.

*Judgment Affirmed.*

Decided December 8, A. D. 1913. Rehearing denied January 12, A. D. 1914.