CITY OF MISSOULA, APPELLANT, *v.* DICK, RECEIVER, ET AL., RESPONDENTS.

(No. 5,938.)

(Submitted June 7, 1926. Decided June 22, 1926.)

[248 Pac. 193.]

*Cities and Towns—Depositaries—Insolvency—When City not Entitled to Preference.*

Cities and Towns—Insolvent Banks—Deposit of City Funds in Designated Depository by Treasurer as Required by Law—City not Entitled to Preference.

1. Under section 5034, Revised Codes of 1921, the city treasurer must deposit public moneys in such bank or banks as the city council shall designate, and under section 5036 he must take from the banks such security as the city council may prescribe, approve and deem fully sufficient to insure the safety of deposits made by him. A city treasurer complied with the foregoing provisions; the city council deemed a bond in the sum of $15,000 sufficient to safeguard the deposits made by him though they exceeded at times the amount of the bond. At the time the designated city depository closed its doors its deposits did exceed the amount of the bond. *Held*, in a proceeding against the receiver of the insolvent bank to have the excess declared a preferred claim on the ground that it had been unlawfully deposited with the knowledge of the bank and therefore it became a trust fund, that, the treasurer having complied with the statutory requirements, the city must be deemed to have consented to the de-

[76 Mont. 502.]

posits as made, that they were legally made and that therefore they were general in character and hence that the city was not entitled to a preference.

Same—Depositaries—Insolvency—Failure of Council to Exact Sufficient Security—Effect on Right to Preference.

2. In the absence of fraud, bad faith or abuse of discretion on the part of a city council in fixing the amount of security exacted from a city depository to safeguard city deposits made by the treasurer as provided by section 5036, which does not designate what relation the security shall bear to the deposits made and under which it may prescribe security either less than or in excess of the amount of the deposits, courts cannot interfere even though, by not requiring security in excess of deposits, the city may sustain loss by failure of the depository; the province of courts being to apply the law as they find it and not to make new laws.

[1]  Banks and Banking, 7 C. J., sec. 548, p. 751, n. 78.
[2]  Depositaries, 18 C. J., sec. 54, p. 585, n. 39 New.

*Appeal from District Court, Missoula County; James M. Self, Judge.*

Proceeding by the City of Missoula against George K. Dick, as receiver of the American Bank & Trust Company, of Missoula, and such company. From the judgment rendered, the city appeals. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. Robert E. Mulroney,* for Appellant.

Appellant relies upon the case of *Yellowstone County* v. *First Trust and Savings Bank,* 46 Mont. 439, 128 Pac. 596, and believes that the rule announced by this court in that case has application here. Under the rule laid down in that case it was the duty of the city treasurer of the city of Missoula to keep his deposits in the respondent bank under the sum of $15,000, the amount of the bond, and the only authority he had to deposit money in defendant bank was the authority conferred upon him by the council in the approval of the depositary bond. If the city treasurer did not keep his deposits under the amount of the bond, his act was

unlawful and the city should be entitled to a preference for the amount by which the deposits exceeded the bond.

*Mr. Thomas N. Marlowe,* for Respondents.

In view of the fact that at the time of the decision of the *Yellowstone County Case,* the law required the treasurer to exact a bond in double the amount of the deposit, and in view of the language of the supreme court in that case, expressing doubt as to the wisdom of such a large bond (see Mont. 46, bottom page 448) it is perfectly apparent that when the old sections 3003 and 3257 were later amended as herein set forth, the legislature intended to and did make the city council a tribunal to determine the amount of the bond in matters of this kind. Therefore, the tribunal having the authority to decide these things, having acted, no abuse of its discretion or authority having been stated, proven, or even hinted at in the statement agreed upon, the bond was good and sufficient, the deposit made thereunder, lawful, and by reason thereof the city became a general creditor of the bank. (*Bignell* v. *Cummins,* 69 Mont. 294, 222 Pac. 797.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal by the city of Missoula from a judgment entered against it in a controversy submitted without action under the provisions of Chapter 7, Part IV, Revised Codes of 1921.

The agreed facts, which became the court's findings, are, briefly stated, as follows: Prior to May 11, 1922, the American Bank & Trust Company of Missoula was duly designated by the city council as a city depository and on that day the bank filed with the city treasurer an indemnity bond in the penal sum of $15,000, in form and substance as prescribed by the council, which bond was thereafter duly approved. This bond did not mention the amount deposited

or to be deposited with the bank, but merely recited that the sureties thereon obligated themselves to indemnify the city from all loss and damage "by reason of depositing of such funds and moneys as have heretofore or shall hereafter have been or be made in or with the said bank from the 10th day of May, 1922, up to and including the 10th day of May, 1924," *etc.,* to the extent of the amounts set opposite their names. No other bond was ever requested by the city or furnished by the bank.

The city treasurer made deposits and withdrawals from time to time, so that the balance varied. These deposits were known to the bank to be city funds, but were treated by the bank and by the treasurer as general deposits; they were commingled with other funds and augmented the assets of the bank. On January 25, 1924, the bank closed its doors with a balance showing on its books in favor of the city of $16,128.21. The insolvency of the bank was duly adjudged, and George K. Dick appointed receiver. The bondsmen paid to the city the full amount of their obligation, and thereafter the city made demand upon the receiver for the balance of its deposit, or $1,128.21, which demand was refused. The agreed statement recites that, "between the time when the deposits first exceeded $15,000 and the date of the closing of the bank, the cash on hand and the cash reserve of the bank greatly exceeded the sum of $1,128.21."

From the agreed statement, the court found, as a matter of law, that the city's claim was not a preferred claim, nor was the fund thus created a trust fund, but that the city was entitled only to dividends as a general creditor, and entered judgment accordingly. From this judgment the city has appealed.

The only question presented is as to the nature of the claim [1] which the city has for the balance of its deposit. The city contends that such balance was unlawfully deposited with the knowledge of the bank, and therefore became a trust fund

entitling it to preference, and, in support of this contention, relies solely upon the authority of *Yellowstone County* v. *First Trust & Savings Bank,* 46 Mont. 439, 128 Pac. 596.

The *Yellowstone County Case,* however, was decided in accordance with the provisions of section 3003, Revised Codes of 1907, which dealt only with county funds, and which prohibited the county treasurer from depositing any public moneys in any bank without first securing from such bank an indemnity bond·in double the amount of the deposit and after the approval by the board of county commissioners thereof. Consequently it was held that a deposit made in violation of such positive prohibition was illegally made, and that "the bank, chargeable with knowledge of the unlawful conduct ·of the * * * treasurer, and therefore an active participant in the wrong, became a trustee *ex maleficio* for the use and benefit of the county."

No such provision governing the deposit of city funds appeared in the Codes. Within three months after the opinion in the *Yellowstone County Case* was promulgated, the legislature amended section 3003 above by eliminating the provision for double security and substituting therefor the following provision:

"The treasurer shall take from such banks such security in public bonds or other securities, or indemnity bonds, as the board of county commissioners of such county may prescribe, approve and deem fully sufficient, and necessary to insure the safety and prompt payment of all such deposits on demand." And, by the same Act, section 3257, Revised Codes of 1907, was amended by adding to the duties of the city treasurer that of depositing public funds in his custody in designated depositories within the city, and then repeating the above-quoted requirement, but substituting the word "council" for the phrase "board of county commissioners of the county." (Chap. 88, secs. 1, 2, Laws of 1913.) In the Revised Codes of 1921, section 3003 as amended, appears as section 4767, while the provision requiring the city treasurer to deposit city

funds appears as section 5034, and the provision with reference to security for city funds appears as section 5036. These provisions were all in effect at the time the bond here under consideration was prescribed and approved.

In 1923, section 4767 above was amended by re-enacting the above provisions concerning county funds and adding thereto and by incorporating in the amendatory Act the provisions of section 5036, so that a single enactment would govern the deposit of all public funds; the Act then repealed section 5036, Chapter 89, Laws of 1923.) This Act was amended in 1925 (Chap. 137, Laws of 1925), but with that amendment we are not now concerned.

It therefore appears that, during all of the times mentioned in the agreed statement of facts, the city treasurer was required to deposit city funds in a bank or banks within the city, designated by the city council for that purpose, and that such treasurer was required to take from such bank or banks such security as the city council should prescribe, approve, and deem fully sufficient and necessary to insure the safety and prompt payment of such deposits on demand; and, further, that such treasurer should neither make deposits nor permit deposits to remain in such bank or banks until the security therefor should have been first "approved by the council and delivered to the treasurer." When the treasurer of either a county or city complies with the statutory requirements in this regard, the corporate entity owning the funds is deemed to have consented to the deposit; the deposit is legally made, and becomes but a general deposit. (*Yellowstone County* v. *Bank,* above; *Bignell* v. *Cummins,* 69 Mont. 294, 36 A. L. R. 634, 222 Pac. 797.)

Under the provisions of section 3003 above, as construed in [2] the *Yellowstone County Case,* the managing officers of the corporation had nothing to do with fixing the amount of security required; that requirement was prescribed by the legislature itself. The treasurer was prohibited from depositing public moneys unless or until security in double the amount

of the proposed deposit was furnished and approved; but, under the law governing here, the legislature has vested in such managing officers discretion to determine and prescribe such security as they "shall deem sufficient," without designating what relation, if any, the security shall bear to the deposits made. The amount of security to be given for the deposit of city funds is thus left to the deliberate judgment of the city council, and, in the absence of fraud, bad faith, or flagrant abuse of discretion, courts cannot interfere, even though the result reached may be unjust and erroneous. (*State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, 186 Pac. 697.)

Here there is no suggestion of fraud, bad faith, or abuse of discretion; the council prescribed and approved the bond which should be given to cover all deposits made between May 10, 1922, and May 10, 1924. As the matter was left to it, it could prescribe security either less than, or in excess of, the amount of such deposits. If we could read into the statute a requirement that the council prescribe security in excess of the deposits, we could as well restore the requirement of double the amount which was wiped out by the legislature; but our province is to apply the law as we find it and not to make laws.

When, in 1913, the legislature amended the then existing provision, it declared that thereafter the new rule should be applied, and, had it intended that public funds should at all times be protected by security in excess of the deposits, it would have said so in no uncertain terms.

As the matter of the amount of security was left to the discretion of the council, it was its duty, if it deemed the bond on file insufficient to protect the full amount of the deposits, to prescribe what further bond should be furnished and to so notify the treasurer, or it might with propriety have directed the treasurer, at the time it prescribed the bond for the period mentioned, not to deposit to exceed a certain amount until further security was prescribed and approved; it did neither,

and therefore, as the bond prescribed was in effect and covered all deposits made, the law was complied with and the deposits made became merely general deposits.

Upon the facts set forth in the agreed statement, the court did not err in entering the judgment appealed from.

Judgment affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.